NO. 07-11-0379-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 8, 2012
_____

In the Interest of G.D.H., A Child
_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 18131; HONORABLE KELLY G. MOORE, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Jason Daniel Hook appeals the trial court's order directing him to execute a document evincing his consent to allow his minor son, G.D.H., to travel overseas with his ex-wife, Tory Hill. The order arose from a hearing upon Hill's motion to enforce the terms of another order of the trial court. Through three issues, Hook argues that the trial court erred in ordering him to execute the consent form. We overrule each issue and affirm.

*Background*

According to the record before us, the trial court signed, on April 30, 2010, a document entitled, "Order in Suit to Modify Parent-Child Relationship." Also appearing on that instrument under the heading "Approved and Consented to as to Both Form and

Substance" were the signatures of Hook and Hill. And, it is the wording within that document that underlies the dispute before us.

Apparently, Hill travelled abroad from time to time and desired to take G.D.H. To facilitate that effort, his parents agreed to the following obligations, which obligations appeared in the April 30th modification order:

> . . . [I]f a conservator intends to have the child travel outside the United States during the conservator's period of possession of the child, the Conservator shall provide written notice to the other conservator. IT IS ORDERED that this written notice shall include all the following:
>
> 1. any written consent form for travel outside the United States that is required by the country of destination, countries through which travel will occur, or the intended carriers;
>
> 2. the date, time, and location of the child's departure from the United States;
>
> 3. a reasonable description of means of transportation, including, if applicable, all names of carriers, flight numbers, and scheduled departure and arrival times;
>
> 4. a reasonable description of each destination of the intended travel, including the name, address, and phone number of each interim destination and the final travel location;
>
> 5. the dates the child is scheduled to arrive and depart at each destination;
>
> 6. the date, time, and location of the child's return to the United States;
>
> 7. a complete statement of each portion of the intended travel during which the conservator providing the written notice will not accompany the child; and
>
> 8. the name, permanent and mailing addresses, and work and home telephone numbers of each person accompanying the child on the intended travel other than the conservator providing the written notice.

So too was it agreed that each parent would "properly execute the written consent form to travel abroad (attached hereto) and any other form required for the travel by the United States Department of State, passport authorities, foreign nations, travel organizers, school officials, or public carriers; when applicable, to have the forms duly notarized; and within ten (10) days of that conservator's receipt of each consent form, to deliver the form to the conservator providing the written notice."  Other language in the April 30th order also bound any parent failing to comply with its terms to pay any costs, expenses, and attorney's fees incurred by the other parent while attempting to enforce it.

After execution of the April 30th order, Hill sought to take G.D.H. to Israel, notified Hook of her intent, and presented him with a written consent form.  Hook refused to execute it, however, because his ex-wife allegedly failed to inform him of all the data required by the April 30th decree.  In response, Hill petitioned the trial court for help.  After convening an evidentiary hearing, the trial court found that Hill substantially complied with the notice requirements, directed Hook to execute the form proffered by her, and ordered him to also pay her attorney's fees, costs and expenses.

*Issues*

Hook's first two issues concern the clarity of the April 30th order and the nature of the consent form proffered by Hill.  His third focuses upon whether his duty to sign was actually triggered since she failed to notify him of all the items mentioned in the order.

*Nature of the Consent Form*

According to Hook, the consent form tendered him had to be of a type "required for travel by the United States Department of State, passport authorities, foreign nations, travel organizers, school officials, or public carriers" and his ex-wife failed to prove that it was. A reasonble construction of the April 30th order indicates otherwise.

As mentioned above, the trial judge was not the only individual to sign the April 30th decree. Both parents also affixed their signatures to it after approving and consenting to its form and substance. Consequently, the writing was more than a judicial fiat of the court; it was and is nothing short of an agreed judgment or order. As such, its interpretation and validity was and is governed by the law of contracts. *Bishop v. Bishop*, 74 S.W.3d 877, 879-80 (Tex. App.–San Antonio 2002, no pet.) (stating that because both spouses agreed to the terms of the decree, its construction was governed by the law of contracts).

Per the rules of construction found within the law of contracts, courts endeavor to discern the parties' intent from the words expressed in the writing. *Id.* at 779-80. Furthermore, the words to be considered when discerning that intent are not merely those which the reader may care to pluck arbitrarily from the document. Rather, all the words must be considered. Stated differently, the parties' intent must be garnered from the writing as a whole. *Cross Timbers Oil Co. v. Exxon Corp.,* 22 S.W.3d 24, 26 (Tex. App.–Amarillo 2000, no pet.). So, each word must be afforded substance when possible. *Markel Ins. Co. v. Muzyka,* 293 S.W.3d 380, 385 (Tex. App.–Fort Worth 2009, no pet.). Each must also be assigned its ordinary meaning. *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d at 26. With that said, we turn to the writing before us.

4

One portion of the April 30th agreed order states that the written notice to be provided "shall include . . . any written consent form for travel outside the United States that is required by the country or destination, countries through which travel will occur, or the intended carriers . . . ." But, another provision mandates that the parent "properly execute the written consent form to travel abroad (attached hereto) and any other form required for travel by the United States Department of State, passport authorities, foreign nations, travel organizers, school officials, or public carriers . . . ." Consequently, we have before us is a writing that has multiple clauses mentioning forms, and because we do, they must be construed together. *Hicks v. Castillo,* 313 S.W.3d 874, 879 (Tex. App.–Amarillo 2010, pet. denied).

Construing the multiple clauses in the manner required leads us to conclude that the parties contemplated the execution of potentially several consent forms. At least one would be any form required by the countries to and through which the child is travelling and by the carriers taking the child. A second would be the written consent form that was supposed to be "attached hereto" (*i.e.* attached to the April 30th agreed order) but, for some reason, was not.[1] To that, we add a third type of document that could or could not be one evincing consent. Reference to that document begins with the phrase "and any other form" and ends with: "required for travel by the United States Department of State, passport authorities, foreign nations, travel organizers, school officials, or public carriers." More importantly, it is only the last form that is described as being one required by the State Department, passport authorities, and the like, not the other two. So, once the pertinent rules of construction are applied, any allegation that

---

[1]As for the latter, nothing in the order mandates that it be of any particular type required by any particular third party.

5

the written consent form proffered by Hill had to be one required by some government entity or third party is mistaken.

*Missing Form*

Next, we consider the contention that the April 30th order was unenforceable because the consent form that was supposed to be attached was not. Its disposition is also governed by the law of contracts.

A court cannot make contracts for the litigants appearing before it. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 747-48 (Tex. 2003). But, there are instances where it can add to a contract already in existence or supply a missing term or provision. Furthermore, the ability to do this depends utterly upon the parties' intent as depicted by the language of the agreement. If this was not so, then the courts would not be able to require that a promise be fulfilled within a reasonable time when time for performance goes unmentioned in the contract; but they can do so and have done just that. *E.g.*, *Allegiance Hillview, L.P. v. Range Texas Production, L.C.,* 347 S.W.3d 855, 869 (Tex. App.–Fort Worth 2011, no pet.) (so directing).

So too may courts imply covenants into an agreement if "a satisfactory basis in the express contracts of the parties . . . makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contracts made." *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d at 747-48. As we are told by our Supreme Court, that power rests "entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself, and it must appear that it was so clearly within the contemplation of the

6

parties that they deemed it unnecessary to express it . . . ." *Id.* at 748. Admittedly, this power must be used cautiously to avoid transgressing upon an individual's freedom to contract in the way he selects. But, it nonetheless exists and was implicitly exercised by the trial court here. And, it is this authority that allowed the trial court to act as it did.

It is clear that the provisions of the April 30th agreed order before us were written with the intent to facilitate G.D.H.'s travel overseas. It is also clear that the parties intended that forms be executed evincing that the signatory consented to the child travelling abroad. The parties also intended that a model form evincing such consent be attached to the order, but it was not. So, what the trial court was faced with was a situation wherein the purpose of the April 30th order and the expressed intent of the parties to that document would be thwarted simply because no one appended the model form to the order. To avoid that outcome, it directed Hook to execute a form that 1) identified him as G.D.H.'s father, 2) expressed his "consent and permission for this child to travel outside the United States of America with . . . Hill . . . to the locations stated in this consent," and 3) identified the "locations" as "Israel." The document was limited in scope and did nothing other than fulfill the intended purpose of the April 30th writing.

Simply put, the trial court did not err in discerning the intent of the parties from the words of the April 30th agreed order, concluding that such intent necessitated Hook's execution of a written consent form to avoid thwarting the purpose of the April 30th agreement, selected a particular form limited to fulfilling that intent and purpose, and told Hook to sign it.

7

*Issue Three*

In his third and final issue, Hook argues that the trial court erred in ordering that he sign the consent form because his duty to do so had yet to be "triggered." Furthermore, that duty had not been triggered because Hill failed to comply with each detail of the notification clause contained in the April 30th mandate. So too does he argue that the trial court lacked the authority to modify the duty imposed on her.

The evidence of record disclosed that Hill provided Hook with information about the trip. Ultimately, it included 1) the date of the child's departure from the United States, 2) the purpose and destination of the trip, 3) the identity of the people with whom the child would travel, 4) the organization with whom they would be working, 5) the time period during which they would be working in Israel, 6) the people in whose custody G.D.H. would be, 7) her permanent address, phone number, email address, and Skype number, and 8) a copy of the child's e-airline ticket and itinerary to Israel. Hill also offered to provide the address at which she would be while in Israel and a phone number at which she could be reached while there when she acquired that information. So too did she offer to meet with the child's father in person to address other questions he had.

Comparing the data required by the April 30th order to that actually revealed to Hook does disclose some deficiencies. For instance, he may not have been told of the "name, address, and phone number of *each* interim destination." Nor was the specific date and time of the child's return to the United States mentioned. But, more than the bulk of the requisite information was disclosed by Hill, and she remained willing to give him additional data. Given this evidence, the trial court turned to the contractual

8

doctrine of substantial compliance. Per that doctrine, exactitude in the performance of contractual duties may not be required where any deviations or deficiencies do not seriously impair the purpose underlying the contractual provision. *In re Doe,* 917 S.W.2d 139, 142-43 (Tex. App.–Amarillo 1996, writ denied). What's more, it has been applied in the realm of family law. *Id.* (applying the contract principle of substantial compliance to an agreement regarding child support and custody). And should we compare the notification requirements in the April 30th order and their underlying purpose to the information actually given Hook, it would be unreasonable to conclude that the trial court erred in holding she substantially complied with her duty. This seems especially so when, as here, the complainant fails to illustrate how the information omitted seriously impaired the purpose underlying the April 30th decree. Consequently, the trial court did not abuse its discretion in applying the contractual doctrine of substantial compliance and directing Hook to execute the consent form.

Having overruled each of appellant's issues, we affirm the trial court's enforcement order.


Brian Quinn
Chief Justice